Filed 4/29/14  Lashgari v. Chen CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ALI R. LASHGARI, | D063300 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00097188-CU-OR-CTL) |
| ANNIE CHEN et al., | |
| Defendants and Respondents. | |

APPEALS from a judgment and an order of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Judgment affirmed.  Order affirmed as modified.

Law Office of Malinda R. Dickenson and Malinda R. Dickenson for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre and Jeffry A. Miller; White & Bright, Eric R. Ginder and Codie C. Dukes; Lafer Ginder and Eric R. Ginder for Defendants and Respondents.

Ali R. Lashgari appeals the summary judgment entered against him in his action against Annie Chen and HKT CAL, Inc. (HKT) for fraud and other claims arising out of

a home sale in which Lashgari was the buyer, Chen represented the sellers, and HKT provided escrow services. Lashgari also appeals the postjudgment order awarding Chen and HKT their costs. We modify the order to delete certain costs that were improperly awarded and otherwise affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Lashgari's Purchase of the Property*

The transaction giving rise to this lawsuit was Lashgari's purchase of a house and associated land (the Property) from Oussama and Helen Aris. Laleh Hedayat, a licensed real estate agent, represented Lashgari in the transaction. Chen, a licensed real estate agent who worked for HKT doing business as Keller Williams Realty, represented the Arises.

After tenants who had occupied the Property from June 2004 through June 2010 moved out, Chen listed the Property for sale. In July 2010, Lashgari made an offer to purchase the Property, contingent upon his right to inspect and accept the condition of the Property. The Arises responded with a counteroffer that changed the escrow holder to Carmel Valley Coast Escrow. Lashgari accepted the counteroffer.

The Arises and Lashgari signed joint escrow instructions. Those instructions disclosed the relationships among HKT, Keller Williams Realty, and Carmel Valley Coast Escrow in the first three sentences: **"HKT CAL, INC., DOING BUSINESS AS KELLER WILLIAMS REALTY AND CARMEL VALLEY COAST ESCROW, IS ACTING AS BOTH REAL ESTATE BROKER AND THE ESCROW HOLDER IN**

2

**THIS TRANSACTION AND WILL BE PAID AN ESCROW FEE. CARMEL VALLEY COAST ESCROW IS WHOLLY OWNED BY HKT CAL., INC. HKT CAL, INC. IS LICENSED BY THE DEPARTMENT OF REAL ESTATE, STATE OF CALIFORNIA, LICENSE NUMBER 01524589."** The parties also signed a disclosure form that stated: "This is to give notice that HKT CAL, Inc. dba Keller Williams Realty Carmel Valley/Del Mar has affiliate business arrangements with the listed providers." Among the listed providers was Carmel Valley Coast Escrow. The form further advised: "You are NOT required to use the listed providers, as a condition for settlement of your loan on the subject property."

During the escrow period, the Arises provided statutory disclosure forms to Lashgari, which he signed. On their real estate transfer disclosure statement, the Arises stated they were not aware of "any significant defects/malfunctions" in walls, roof, windows, doors, or plumbing/sewers/septics. In a seller property questionnaire and its addendum, the Arises disclosed that a water heater was replaced in 2004, a leaking hot water pipe was rerouted in 2007, a roof leak was repaired in 2007, a prior tenant had a dog, and valves were "changed" in the master bathroom. Also during the escrow period, Lashgari commissioned multiple inspections of the Property.

Integrity Home Inspections issued a lengthy and detailed written report that identified multiple defects in need of repair, including (1) openings in exterior walls that may need to be sealed, (2) a broken outdoor sprinkler valve, (3) leaking outdoor hose faucets, (4) cracked and misaligned roof tiles that could leak, (5) a damaged water heater stand surface, and (6) excess moisture in a kitchen/dining room wall section and a wall of

3

the upstairs bathroom. After receiving this report, Lashgari sent Hedayat an e-mail in which he wrote he had "second thoughts" about the Property, particularly because of the roof defects, the prior leaks, and "the moisture in the upper floor bathroom and under the sink." Nevertheless, the following day, Lashgari advised Hedayat he would proceed with the purchase of the Property.

Plumbing Plus inspected the Property and identified several plumbing problems. Outdoor hose faucets, the toilet in the downstairs bathroom, and the ice maker were reported to be leaking. The outflow from the water heater was noted to have been re-piped.

Roof Rx, a roof repair company, inspected the roof and confirmed the findings of Integrity Home Inspections that several roof tiles had broken or slipped and recommended repairing them. Roof Rx also recommended repairing the roof field and ridgeline and resealing mortar cracks, pipes, and flashing.

San Diego Water Damage & Remediation Services reported water damage and mold remediation in various parts of the house. In the kitchen, cabinets showed water damage and mold formation, and a leak in the refrigerator water supply valve was damaging surrounding building materials. The upstairs hall bathroom had elevated moisture readings. The utility closet had "evidence of a previous water loss . . . that was not cleaned up properly." A "strong odor" was detected in an upstairs bedroom and was probably emanating from a source under the carpet. Lashgari also noticed a "putrid smell" in the bedroom during a visit to the Property with Hedayat.

4

Kennedy Pest Control, Inc. (Kennedy) found drywood termite damage for which it recommended fumigation and also noted excessive moisture in the utility closet door. Chen informed Hedayat that in June 2010, a company fumigated the Property and issued clearance tags and a two-year warranty, but Kennedy would not accept the clearance. A third inspector, Trump Pest Control, Inc. (Trump), was then hired to re-inspect the Property. Trump reported no current activity by termites, but recommended repairs of prior damage caused by drywood termites. Chen advised Hedayat that the reports prepared by Kennedy and Trump were the same, except the Trump report did not note any problem with the utility closet door, which had been replaced before the inspection by Trump. Lashgari signed amended escrow instructions acknowledging receipt of the reports prepared by Kennedy and Trump.

Based on the findings and recommendations of the various inspectors, Lashgari (through Hedayat) submitted a list of questions to the Arises, which they answered; and he then submitted a written request that the Arises make the repairs recommended by the inspectors, including the roof defects, leaks and water damage, and the odor in the upstairs bedroom. The Arises agreed to repair some of the items on Lashgari's list and gave him a credit toward the purchase price for the others. Lashgari subsequently removed all contingencies and completed the purchase of the Property.

B.    *The Post-purchase Problems at the Property*

After escrow closed, Lashgari hired a contractor to eliminate the noxious odor in the upstairs bedroom. According to Lashgari, the contractor pulled up the carpet and discovered the padding underneath "had urine and feces stains all over it."

5

After Lashgari moved into the Property, two leaks occurred. One involved the bathtub in the master bathroom. A leak in the overflow valve of the bathtub caused water to flow through walls down to the dining room. A plumber hired to repair the leak found that the valve was broken and that someone had tried to repair it with glue. The second leak involved the piping for the water heater and caused water to seep under the downstairs flooring. When this leak was repaired, prior water damage and mold were found on the water heater stand.

C.      *Lashgari's Lawsuit Against Defendants*

Lashgari sued defendants for damages.[1] In a second amended complaint, he generally alleged that "a dishonestly conducted sale of residential property" has "cost [him] too much, including the cost of repairs, improvements, and time away from his business and with his two young daughters."

More specifically, Lashgari alleged that Chen (1) "failed to disclose and concealed that repairs were required to the plumbing in the master bathroom"; (2) "actively concealed" the existence of "excessive feces and urine stains throughout the [house]"; (3) "actively misled and concealed . . . water intrusion and damage near the dining room wall"; (4) falsely told Lashgari she was "unaware of any leak in the upstairs hall bathroom"; (5) "concealed the extent of the roof problems, . . . as well as water intrusion near and around the front window and the chimney on the ceiling in the living room"; (6) failed to disclose "any flooding or drainage problems," even though she knew that

---

[1]      Lashgari also sued the Arises, but they settled and are not parties to this appeal.

incomplete or inadequate plumbing repairs had been made; and (7) failed to disclose problems with sprinklers and other water-related equipment. Lashgari further alleged that defendants (1) "attempted to prevent [him] from becoming aware of water intrusion problems" described in a pest inspection report by requiring him to sign amended escrow instructions acknowledging the report; and (2) "did not explain the true nature or the effect of the[ir] relationship . . . and led [Lashgari] to believe he was being represented by an escrow company which was a separate and distinct entity from HKT, Keller Williams [Realty], and [Chen]."

Based on these allegations, Lashgari asserted counts labeled "Fraud and Deceit" and "Failure to Disclose Material Facts" against both Chen and HKT. He also asserted counts labeled "Breach of Fiduciary Duty" and "Constructive Fraud" against only HKT in its capacity as escrow holder.

Defendants answered the second amended complaint by asserting general denials and various affirmative defenses.

D.     *Defendants' Motion for Summary Judgment*

Defendants filed a motion for summary judgment. Based on declarations from Chen and the escrow officer; excerpts of the transcripts of the depositions of Lashgari, Hedayat, and former tenants of the Property; and various documents related to inspections of the Property and the escrow, defendants argued Lashgari could not establish that defendants made any affirmative misrepresentations about the condition of the Property, that he justifiably relied on any of their representations, or that he suffered any damages as a result of such reliance. Defendants also argued Lashgari's claims failed

7

because he actually knew all of the allegedly concealed facts about the condition of the Property and about the business relationships among HKT, Keller Williams Realty, and Carmel Valley Coast Escrow and because he was not harmed by any alleged concealment.

Lashgari opposed the motion. Based on various deposition excerpts and exhibits, correspondence, and documents obtained from online governmental sources, Lashgari argued Chen affirmatively misrepresented the effects of the multiple termite reports and concealed leaks, roof repairs, and odor problems, and HKT concealed the facts that Carmel Valley Coast Escrow and Keller Williams Realty did not exist as separate entities. Had he known the true facts, Lashgari asserted, he would not have bought the Property. As part of his opposition, Lashgari requested a continuance of the hearing on the motion so that he could conduct additional discovery into the corporate structure of HKT, and also requested leave to amend his complaint to assert consumer protection claims.

In reply papers in support of the summary judgment motion, defendants emphasized Lashgari's inability to prove he justifiably relied on any misrepresentation or concealment or suffered any harm as a result of such reliance. Defendants also argued HKT, in its role as escrow holder, had no duty to disclose the defects in the Property of which Lashgari complained.

The trial court heard oral argument on defendants' motion for summary judgment and took the matter under submission. The court stated it would decide whether to grant

8

Lashgari leave to amend his complaint based on its decision on the summary judgment motion.

E.     *The Judgment*

Several days after the hearing on defendants' motion for summary judgment, the trial court issued a written order granting the motion, and later entered a judgment of dismissal in favor of defendants and against Lashgari.

F.     *Lashgari's Ex Parte Applications Regarding Leave to Amend*

Three days before the hearing on defendants' motion for summary judgment, Lashgari filed an ex parte application for an order shortening time to file a motion for leave to amend.  The following day, the court did not rule on the application but stated it would address the request for leave to amend "if needed" at the hearing on the summary judgment motion.

Five days after entry of judgment, Lashgari filed an ex parte application for a hearing date on a motion for leave to file a third amended complaint.  The court denied the application on the ground "[t]here is no need to have a motion for leave to amend a complaint that has been dismissed."

G.     *Lashgari's Motion for a New Trial*

Lashgari moved for a new trial (Code Civ. Proc., § 657) on the grounds the summary judgment was improperly entered without first allowing him to conduct additional discovery, to amend his complaint, or to object to the form of the judgment. The trial court denied the motion.

9

H.      *The Award of Costs*

Defendants filed a memorandum of costs.  Lashgari moved to strike the memorandum or, alternatively, to tax costs.  The trial court struck some of defendants' claimed costs, but awarded all of the filing and motion fees they requested.

I.      *Lashgari's Appeals*

Lashgari filed three notices of appeal:  (1) from the judgment of dismissal based on the order granting defendants' motion for summary judgment; (2) from the order denying his motion for a new trial;[2] and (3) from the order awarding defendants their costs.

II.

DISCUSSION

Lashagari contends the trial court should not have granted defendants' motion for summary judgment, but should have granted him a continuance and leave to amend.  He also contends the trial court erroneously awarded defendants certain costs.  As we shall explain, we agree certain filing and motion fees were improperly awarded as costs but reject Lashgari's other contentions.

_____

[2]      Lashgari's appeal from the order denying his new trial motion is not properly before us.  "An appeal does not lie from an order denying a motion for a new trial." (*Erickson v. Estergomy* (1932) 214 Cal. 557, 558.)  Although such an order may be reviewed on an appeal taken from a judgment (*Fogo v. Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 749), Lashgari abandoned this aspect of his appeal by failing to include in his briefing any argument as to why the order was wrong (*In re Sade C.* (1996) 13 Cal.4th 952, 994; *Spitler v. Children's Institute International* (1992) 11 Cal.App.4th 432, 442; *Thompson v. Thompson* (1966) 247 Cal.App.2d 339, 341).  We therefore do not consider further Lashgari's appeal from the order denying his motion for a new trial.

10

A.      *The Trial Court Properly Granted Defendants' Motion for Summary Judgment*

Lashgari complains the trial court erred by granting summary judgment because defendants "did not even attempt to show each cause of action had no merit," and "there were triable issues of material fact on the limited issues [they] did address."  We disagree.

1.      *Standard of Review*

A defendant may move for summary judgment on the ground the action has no merit, i.e., as to each cause of action at issue, the plaintiff cannot establish an essential element or the defendant has a complete defense.  (Code Civ. Proc., § 437c, subds. (a), (*o*); *Ventura Kester, LLC v. Folksamerica Reinsurance Co.* (2013) 219 Cal.App.4th 633, 640.)  To prevail on a motion for summary judgment, the defendant must submit evidence showing there are no triable issues of material fact, and under the applicable law the plaintiff cannot prevail on any asserted cause of action.  (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  To defeat the motion, the plaintiff must set forth specific facts showing the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Ventura Kester*, at p. 640.)  We review the trial court's decision de novo based on the record that was before the court when it ruled on the motion, liberally construing the plaintiff's evidence and resolving any evidentiary doubts in his favor.  (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705; *Cann v. Stefanec* (2013) 217 Cal.App.4th 462, 467-468.)

11

2.      *Analysis*

        a.      *The Issues Raised by Lashgari's Complaint*

We begin with an analysis of Lashgari's pleadings, which delimit the issues to be resolved by defendants' motion for summary judgment.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)  After describing the counts Lashgari alleged, we shall set forth the essential elements of each.

The counts labeled "Fraud and Deceit" and "Failure to Disclose Material Facts," though separately stated, were based on the same underlying factual allegations. Lashgari alleged that Chen knew about but did not disclose various leaks, a foul odor, and other defects in the Property and concealed her relationship with HKT; and that Chen and HKT led him to believe Carmel Valley Coast Escrow was separate and distinct from HKT.  Lashgari further alleged that defendants intended their misrepresentations and nondisclosures to induce him to buy the Property and that he believed them; but had he known the true facts about all the defects in the Property and the relationships among Chen, HKT, Carmel Valley Coast Escrow and Keller Williams Realty, he would not have bought it.

Substantially identical allegations were contained in separate counts labeled "Breach of Fiduciary Duty" and "Constructive Fraud," but these counts were asserted only against HKT in its capacity as escrow holder.  In these counts, Lashgari alleged that HKT knew about but did not disclose to him the leaks, foul odor, and other defects in the Property, the relationship between Chen and HKT, and the fact that Keller Williams

12

Realty and Carmel Valley Coast Escrow were not separate and distinct from HKT. As a result of these nondisclosures, Lashgari alleged he was unaware of the true facts and would not have closed escrow and purchased the Property had he known them.

As indicated above, the allegations underlying Lashgari's counts labeled "Fraud and Deceit" and "Failure to Disclose Material Facts" are essentially the same and can be considered a claim for actual fraud based on nondisclosure or concealment. (We sometimes refer to these counts collectively as "the actual fraud counts.") "It is fraud to suppress a fact with intent to induce a person to enter a contract to acquire realty." (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1383 (*Alfaro*).) To establish such a fraud claim, Lashgari must prove: (1) defendants concealed a material fact; (2) defendants had a duty to disclose the fact to him; (3) defendants concealed the fact with the intent to induce reliance by him; (4) he was unaware of the fact and would not have acted as he did had he known of the concealed fact; and (5) as a result of the concealment of the fact, he sustained damages. (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 433 (*Knox*); *County of Mariposa v. Yosemite West Associates* (1988) 202 Cal.App.3d 791, 812 (*County of Mariposa*).)

As also indicated above, the allegations underlying Lashgari's constructive fraud and breach of fiduciary duty counts are essentially the same. (We sometimes refer to these counts collectively as "the constructive fraud counts.") The elements of Lashgari's

13

count for breach of fiduciary duty are the existence of a fiduciary relationship,[3] the failure to disclose material facts, and damages resulting from the nondisclosure. (*Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1164 (*Jameson*); *Byrum v. Brand* (1990) 219 Cal.App.3d 926, 938, 941 (*Byrum*).)  Similarly, "[c]onstructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice." (*Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 129.)  " 'In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damages to another.' " (*Barrett v. Bank of America* (1986) 183 Cal.App.3d 1362, 1368-1369.)  Thus, "breach of a fiduciary duty usually constitutes constructive fraud." (*Knox*, *supra*, 205 Cal.App.4th at p. 434; accord, *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 563.)

        b.     *Defendants' Showing*

We next determine whether the evidence defendants submitted in support of their summary judgment motion showed Lashgari could not establish one or more essential elements of his claims.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851, 853-854; *Knox*, *supra*, 205 Cal.App.4th at p. 423.)  Defendants contended Lashgari could not establish the nondisclosure, reliance, or damage elements of the actual

---

[3]    "An escrow holder is an agent and fiduciary of the parties to the escrow." (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 (*Summit Financial*).)  The fiduciary duty, however, is "limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow." (*Ibid.*)

fraud counts. They also contended he could not establish the nondisclosure element of the constructive fraud counts. As we discuss below, defendants submitted evidence sufficient to sustain these contentions.

Chen filed a declaration in support of the motion for summary judgment.[4] She stated she knew of plumbing leaks and roof leaks that occurred during the long-term tenancy that preceded Lashgari's purchase of the Property, but to her knowledge those leaks were all promptly and adequately repaired. Chen also stated she had no knowledge of any foul odors or animal feces in the house, inadequate repairs to the overflow valve of the bathtub in the master bathroom, or mold in the water heater closet. Because an agent of the seller of real property has a duty to disclose facts materially affecting the value or desirability of the property *only if the agent actually knows of those facts*, Chen had no duty to disclose current roof leaks, foul odors, animal feces, the broken overflow valve in the bathtub of the master bathroom, or mold in the water heater closet. (See, e.g., *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 410 (*Assilzadeh*) [seller's "agent must have actual knowledge in order to be liable for failing to disclose a material fact"]; *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1055 ["the duty cannot arise when, as here, such significant facts are not *actually* known

---

[4]      Lashgari disparages Chen's declaration and that of HKT's escrow officer as "self-serving," and complains the trial court did not rule on his objections to the declarations. Lashgari, however, has not renewed any specific objections on appeal, or offered any reasoned argument with citations to authority as to why the objections should have been sustained. We therefore deem his evidentiary objections abandoned. (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

15

to the defendant"]; *Karoutas v. HomeFed Bank* (1991) 232 Cal.App.3d 767, 771 ["a duty to disclose arises at common law if material facts are known only to the defendant"].) Thus, to the extent Lashgari's actual fraud counts were based on Chen's failure to disclose those particular defects in the Property, defendants showed the counts had no merit.

Defendants also demonstrated the actual fraud counts had no merit by submitting documents showing that information Lashgari alleged was not disclosed to him — the leaks, odor, and other defects in the Property and the relationships among Chen, HKT, Keller Williams Realty, and Carmel Valley Coast Escrow (see pt. I.C., *ante*) — was, in fact, disclosed. For example:

> — San Diego Water Damage & Remediation Services reported a "strong odor" in an upstairs bedroom and suggested it was coming from a source under the carpet. Lashgari himself detected a "putrid smell" in the bedroom when he visited the Property with Hedayat. The Arises disclosed in the property questionnaire that a prior tenant had a dog, an obvious potential cause of the odor.
>
> — Both Integrity Home Inspections and San Diego Water Damage & Remediation Services identified excess moisture in walls in the kitchen and the upstairs hall bathroom.
>
> — In the property questionnaire addendum, the Arises disclosed a roof leak in 2007. Both Integrity Home Inspections and Roof Rx reported broken tiles and other roof defects that could cause leakage.
>
> — In the property questionnaire and in response to questions from Lashgari, the Arises disclosed that in 2005 pipes had burst and had to be re-routed in several downstairs rooms.
>
> — Integrity Home Inspections and Plumbing Plus identified leaking hose faucets and defects in the outdoor sprinkler system.
>
> — The pest inspection report prepared by Kennedy disclosed "[e]xcessive moisture" in the utility closet door. Chen explained in an e-mail to Hedayat that the pest inspection report later issued by Trump did not contain a similar disclosure because the door had been replaced before Trump

16

performed its inspection. Copies of both the Kennedy and the Trump reports were provided to Lashgari as part of the escrow.

— The offer to buy the Property submitted by Lashgari listed Keller Williams Realty as the listing broker and Chen as the listing agent, and Chen completed an agent's inspection disclosure form in which she listed herself as an associate licensee with Keller Williams Realty. The escrow instructions and a separate disclosure form advised that HKT does business as Keller Williams Realty and as Carmel Valley Coast Escrow, that HKT was acting as both real estate broker and escrow holder in the transaction, that HKT would be paid an escrow fee, and that Lashgari was not required to use Carmel Valley Coast Escrow to close the transaction.

In addition to these documents, the complaint contains an allegation that the Arises disclosed in the property questionnaire addendum that " 'valves has [*sic*] been changed' in the master bathroom."[5]  Thus, the material facts Lashgari alleged were concealed from him were actually disclosed to him in writing before he purchased the Property.

Lashgari is charged with knowledge of all of these disclosures.  He signed the property questionnaire and addendum, the agent's inspection disclosure, the escrow instructions, the escrow disclosure form, and amended escrow instructions acknowledging receipt of the pest inspection reports prepared by Kennedy and Trump. Parties dealing at arm's length in a transaction are presumed to have read and understood the documents they signed.  (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 93; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674.)  Also, after Lashgari received the inspection reports, he sent Hedayat an e-mail expressing "second thoughts about buying this house" and then "list[ing] the issues" that were causing him

---

5      The copy of the property questionnaire addendum contained in the record on appeal contains no such disclosure, but page 4 of the addendum is missing.

concern, including roof defects, leaks, and mold. Lashgari subsequently submitted written questions to the Arises about several defects in the Property and received written responses from them. Finally, at the hearing on the summary judgment motion, Lashgari's counsel conceded that Lashgari had read all of the reports prepared by the property inspectors he hired.

On this record, defendants met their initial burden of showing that Lashgari could not establish an essential element of his actual fraud counts, namely, that he was actually unaware of and could not reasonably discover the allegedly undisclosed facts. (See, e.g., *Knox*, *supra*, 205 Cal.App.4th at p. 433 [fraud by nondisclosure requires "the plaintiff was unaware of the fact"]; *Stevenson v. Baum* (1998) 65 Cal.App.4th 159, 166 [defendant did not breach duty to disclose when disclosures put plaintiff on notice of material facts even though disclosures did not reveal all details of those facts]; *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 608 ["Actionable nondisclosure relates to facts not discoverable by the plaintiffs."]; *County of Mariposa*, *supra*, 202 Cal.App.3d at p. 812 [fraud by nondisclosure requires material facts "being unknown to or beyond the reach of the plaintiff"].)

Defendants also submitted evidence satisfying their initial burden to show Lashgari's constructive fraud counts had no merit. Those counts were asserted against HKT in its capacity as escrow holder. "[A]n escrow holder 'has no general duty to police the affairs of its depositors[.]' " (*Summit Financial*, *supra*, 27 Cal.4th at p. 711.) Unless the escrow holder colludes with a party to the escrow, the escrow holder has no obligation to inform the other party of suspicious facts that might indicate he is being

18

defrauded. (*Ibid.*; *Romo v. Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1618, fn. 9; *Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 161-163.) Here, defendants filed a declaration from the escrow officer that negated any such collusion: "During the escrow, [the escrow officer] was never informed by any source of any false representations, false disclosure, or concealed information, by either [Chen] or the [Arises]." This evidence defeated the constructive fraud counts to the extent they were based on a duty to disclose defects in the Property. To the extent those counts were based on HKT's failure to disclose its relationships with Chen, Keller Williams Realty, and Carmel Valley Coast Escrow, the counts failed because the relationships were disclosed in the offer to purchase the Property, the agent's inspection disclosure form, the escrow instructions, and the escrow disclosure form, all of which Lashgari signed. Defendants' evidence thus negated the nondisclosure element of Lashgari's counts for breach of fiduciary duty and constructive fraud. (See *Byrum*, *supra*, 219 Cal.App.3d at pp. 938, 941 [constructive fraud and breach of fiduciary duty require failure to disclose material facts known to fiduciary].)

Defendants' documentary evidence also sufficed to meet their initial burden to show Lashgari's entire action had no merit, because that evidence indicated he could not prove the reliance element essential to each of his counts. Reasonable or justifiable reliance on an alleged nondisclosure is an essential element of a claim for actual or constructive fraud. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, fn. 4; *Alfaro*, *supra*, 171 Cal.App.4th at p. 1383.) "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct

19

which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." (*Alliance Mortgage*, at p. 1239.) In deciding to purchase the Property, Lashgari could not reasonably have relied on alleged nondisclosures of defects in the Property and the extent of defendants' business relationships when such nondisclosures were contrary to information he knew from inspection reports, escrow instructions, disclosure forms, and other documents he read or signed. (See, e.g., *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 393-394 [plaintiff's signature of letter stating employment was at will defeated contention in fraud claim that he reasonably understood defendant to have promised long-term employment]; *Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578, 1589 [plaintiff could not reasonably rely on defendants' oral representations that "were patently at odds with the express provisions of the written contract" they received but did not read].) Where, as here, " 'the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied recovery.' " (*Alliance Mortgage*, at p. 1240.)

In sum, we conclude defendants satisfied their initial burden to show Lashgari's action had no merit by showing he could not establish one or more of the essential elements of each count he asserted against them. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 853.) The burden then shifted to Lashgari to submit evidence that created a triable issue of material fact. (Code Civ. Proc., § 437c,

20

subd. (p)(2); *Aguilar*, at p. 850; *Allyson v. Department of Transportation* (1997) 53 Cal.App.4th 1304, 1317.)

        c.     *Lashgari's Showing*

Finally, we examine the evidence Lashgari submitted in opposition to defendants' summary judgment motion to determine whether he set forth "specific facts showing that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar*, *supra*, 25 Cal.4th at p. 850; *Assilzadeh*, *supra*, 82 Cal.App.4th at p. 408.) As we shall explain, Lashgari's showing was insufficient to defeat defendants' motion.

Initially, Lashgari argues the burden to submit evidence showing a triable issue of material fact never shifted to him because defendants "failed to present any evidence that [his counts] had no merit as to the allegations regarding HKT directly." We disagree. As a corporation, HKT "cannot act at all except through its employees and agents." (*Black v. Bank of America* (1994) 30 Cal.App.4th 1, 6.) Thus, "a corporation and its employees generally function as a single legal unit and are the same legal 'person' for purposes of applying various tort, agency, and jurisdiction principles." (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1392.) In particular, "a judgment in favor of the agent *ex propri*[*o*] *vigore* relieves the principal of responsibility, and may be availed of by the principal for that purpose." (*Bradley v. Rosenthal* (1908) 154 Cal. 420, 425.) Here, in its dealings with Lashgari, HKT acted through Chen and the escrow officer. Indeed, Lashgari repeatedly alleged in his operative complaint that Chen was an agent of HKT and was authorized to act and did act on HKT's behalf. Therefore, defendants' showing

21

on the motion for summary judgment applied to HKT to the same extent it applied to Chen and the escrow officer, both of whom acted as HKT's agents.

In a related argument, Lashgari contends defendants "produced **no evidence whatsoever that HKT satisfied its fiduciary duties.**" According to Lashgari, "[t]he evidence provided in fact appears to indicate that HKT did **not** follow the escrow instructions, and that HKT did **not** disclose to [him] that it had not done so." Lashgari relies on documents specifying how a payment that the escrow instructions directed be made to Keller Williams Realty was to be shared with two other entities, and other documents explaining that Carmel Valley Coast Escrow had changed banks and directing all wire transfers be deposited in a bank different from the one specified in the escrow instructions. Defendants, however, had no obligation to introduce evidence showing HKT strictly complied with the escrow instructions, because Lashgari did not allege noncompliance with the instructions as the basis of his breach of fiduciary count against HKT. "The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories *as alleged in the complaint*. A 'moving party need not ". . . refute liability on some theoretical possibility not included in the pleadings." ' " (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342.) In any event, Lashgari has not explained how the complained-of deviations from the escrow instructions actually caused him any loss that would support a claim for breach of fiduciary duty. (See *Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 532 [escrow holder is liable for losses caused by failure to follow instructions]; *Jameson*,

*supra*, 215 Cal.App.4th at p. 1164 [essential element of breach of fiduciary duty claim is " 'damage proximately caused by the breach' "].)

Lashgari next asserts that defendants "made no attempt to negate" that: (1) "HKT had represented it 'owned' something that did not exist or that it had held Carmel Valley Coast Escrow out to be a separate entity from HKT and Keller Williams Realty when in fact it was a fiction"; or (2) "HKT did not fully disclose its agency relationship with Chen." Again, we disagree. The escrow instructions and a separate disclosure form, both of which Lashgari signed, clearly stated that HKT did business as Carmel Valley Coast Escrow and as Keller Williams Realty, and that HKT was acting as both real estate broker and escrow holder in the transaction. The offer to purchase the Property and the agent's inspection disclosure form, both of which Lashgari signed, identified Chen as an agent of Keller Williams Realty. These disclosures were sufficient to negate Lashgari's allegations that defendants failed to disclose their affiliated business relationships and misled him into believing Carmel Valley Coast Escrow was separate and distinct from HKT.

Finally, Lashgari argues the trial court failed to consider evidence he submitted that purportedly created triable issues of material fact as to his actual fraud claims against Chen. He cites e-mails and other documents that purportedly showed that Chen concealed or failed to disclose various defects in the Property (e.g., "prior leaks in the upstairs hall bathroom," "chronic roof leaks," and "urine and feces stains and odors"), and misrepresented the differences among and reasons for the multiple pest inspection reports. These documents did not create a triable issue of material fact.

23

As to the Property defects, the material facts were disclosed to Lashgari. Again, as discussed above, disclosure forms and correspondence provided by the Arises and inspection reports prepared by contractors hired by Lashgari identified multiple plumbing and water intrusion problems (including in the upstairs hall bathroom), multiple roof defects that could cause leaks, a foul odor in an upstairs bedroom, and other defects Lashgari contends Chen concealed. Although the exact cause, extent, or duration of each defect was not disclosed, a seller's agent has no "duty to provide details that would merely serve to elaborate on the disclosed facts." (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161; see *Pagano v. Krohn* (1997) 60 Cal.App.4th 1, 9 [seller's agents had no duty to disclose "additional facts [that] would have served only as elaboration on the basic disclosed fact that there was a water intrusion problem"].) Moreover, Chen cannot be held liable for actual fraud for not disclosing material facts of which the Arises and his own inspectors made Lashgari aware. (See *Knox*, *supra*, 205 Cal.App.4th at p. 433 [fraud by nondisclosure requires "the plaintiff was unaware of the fact"].)

As to the pest inspection reports, Lashgari simply cited the e-mail in which Chen explained to Hedayat that the Trump and Kennedy reports were the same, except the moisture in the utility closet door noted in the Kennedy report was not noted in the Trump report because the door had been replaced in the time between the two inspections. Lashgari submitted no evidence that contradicted Chen's explanation or that showed Chen had other information about the pest inspection reports she did not disclose. Lashgari merely "speculat[es] [Chen] must have known more than [she] said. ' "[T]he opposition to summary judgment will be deemed insufficient when it is essentially

24

conclusionary, argumentative or based on conjecture and speculation . . . ." ' [Citation.]

Such is the case here. The trial court did not err in granting summary judgment on the

[actual fraud] theories." (*Padgett v. Phariss* (1997) 54 Cal.App.4th 1270, 1284.)

In sum, Lashgari did not satisfy his burden to "set forth the specific facts showing

that a triable issue of material facts exists" as to each count challenged by defendants.

(Code Civ. Proc., § 437c, subd. (p)(2).) The trial court therefore correctly granted

defendants' motion for summary judgment. (*Id.*, § 437c, subd. (c); *Aguilar*, *supra*, 25

Cal.4th at p. 843; *Assilzadeh*, *supra*, 82 Cal.App.4th at p. 412.)

B.      *The Trial Court Properly Denied a Continuance and Leave to Amend*

Lashgari argues the trial court erroneously denied his request for a continuance of

the hearing on defendants' summary judgment motion to allow him to depose another

witness and to obtain additional documents regarding HKT's corporate structure. He also

argues the court erroneously denied his request for leave to file a third amended

complaint to assert "viable consumer protection claims." These arguments have no merit.

1.      *Standards of Review*

We review for abuse of discretion a trial court's denial of a plaintiff's request to

continue a hearing on a defendant's summary judgment motion so that the plaintiff may

conduct further discovery. (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038;

*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1270.) We also

review for abuse of discretion a trial court's denial of leave to amend a complaint that has

been challenged by a motion for summary judgment. (*Kirby v. Albert D. Seeno

Construction Co.* (1992) 11 Cal.App.4th 1059, 1067-1070.)

25

2.      *Analysis*

      a.      *Denial of Continuance of Summary Judgment Hearing*

Lashgari has not shown any error in the trial court's denial of his request for a continuance of the summary judgment hearing.[6]  A party opposing a summary judgment motion may obtain a continuance of the hearing by submitting a declaration stating that "facts essential to justify opposition may exist but cannot, for reasons stated, then be presented." (Code Civ. Proc., § 437c, subd. (h).)  The declaration "must detail the specific facts that would show the existence of controverting evidence" and "the specific reasons why they cannot then be presented." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715, 716.)  Lashgari submitted no such declaration.  Instead, in a memorandum of points and authorities filed in opposition to the motion, he asked for a continuance to take another deposition and obtain additional documents that "will shed further light on the corporate structure of HKT."  Lashgari did not explain, however, what specific information he expected to obtain about HKT's corporate structure or how such information would defeat the motion.  The only pertinent allegation of the complaint related to HKT's corporate structure was that defendants misled Lashgari to believe that Carmel Valley Coast Escrow was "a separate and distinct entity" from HKT.  Defendants disproved this allegation by submitting escrow instructions and a disclosure form, both signed by Lashgari, which disclosed that HKT did business as Carmel Valley Coast

---

[6]     The record in this case contains no express ruling on Lashgari's request for a continuance, but we presume the trial court denied it based on its decision to grant defendants' motion for summary judgment. (*California Automobile Ins. Co. v. Hogan* (2003) 112 Cal.App.4th 1292, 1305, fn. 4 (*Hogan*).)

26

Escrow, was acting as both real estate broker and escrow holder in the transaction, and would derive a financial benefit from the transaction. (See pt. I.A., *ante*.) In light of this evidence and the absence of any explanation from Lashgari, we do not see how his proposed additional discovery into HKT's corporate structure would enable him to create a triable issue of fact as to whether defendants misled him into believing Carmel Valley Coast Escrow was separate and distinct from HKT. Where, as here, the party requesting a continuance of a hearing on a summary judgment motion did not submit a declaration "showing 'that a continuance is needed to obtain facts essential to justify opposition to the motion' " (*Hogan*, *supra*, 112 Cal.App.4th at p. 1305), and "the proposed discovery is focused on matters beyond the scope of the dispositive issues framed by the pleadings" (*Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1023), a trial court properly may deny the continuance.

### b. *Denial of Leave to Amend*

Lashgari also has not demonstrated any error in the trial court's denial of his request for leave to file a third amended complaint. He complains the court "never considered [his] viable consumer protection claims, but nevertheless entered dismissal with prejudice." In his opening brief on appeal, however Lashgari neither identified any specific claim he wished to add to his complaint nor made any legal argument as to how the court abused its discretion in denying leave to amend. As the appellant, Lashgari has the burden of affirmatively showing error; he may not simply assert error and then leave it to us to supply a supporting argument. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.)

27

Lashgari did not satisfy that burden by arguing — *for the first time in his reply brief* — that the trial court improperly denied leave to amend based on calendaring constraints, or that he has meritorious claims for violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). "Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument." (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Since Lashgari has provided no reason to depart from this rule, we deem forfeited his challenge to the trial court's denial of leave to file a third amended complaint. (*Holmes v. Petrovich Development Co.* (2011) 191 Cal.App.4th 1047, 1064, fn. 2; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 660; *Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 960, fn. 4.)

C.     *The Trial Court Erroneously Awarded Defendants Certain Filing Fees as Costs*

Finally, Lashgari contends the trial court improperly included among the costs awarded to defendants certain filing and motion fees paid for Keller Williams Realty and Carmel Valley Coast Escrow because those entities are fictitious. (See Code Civ. Proc., § 1033.5, subds. (a)(1), (c)(2) [filing and motion fees are recoverable as costs if they are reasonably necessary to conduct of litigation].) We agree.

"Doing business under a fictitious business name does not create a separate legal entity." (*Meller & Snyder v. R & T Properties, Inc.* (1998) 62 Cal.App.4th 1303, 1311.) Consequently, a corporation sued in its fictitious business name need only appear in its

28

true corporate name and need not also appear separately in its fictitious name. (*Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1349 (*Pinkerton's*).)

Here, the trial court awarded defendants the entirety of the $1,225 they paid when they made their first appearances in the trial court. That amount appears to include *three* fees of $355 each (totaling $1,065) for filing "the first paper in the action . . . on behalf of any defendant" (Gov. Code, § 70612, subd. (a)), which in this case was a demurrer, plus *four* fees of $40 each (totaling $160) for filing an accompanying motion to strike (*id.*, former § 70617, subd. (a)). No separate "first paper" or motion fees should have been paid for either Keller Williams Realty or Carmel Valley Coast Escrow, however, because they are merely fictitious names by which HKT does business. (*Pinkerton's*, *supra*, 49 Cal.App.4th at p. 1349.) Defendants should have paid only two "first paper" fees (totaling $710) and only two motion fees (totaling $80), for a grand total of $790 in first appearance fees. (See *Townzen v. County of El Dorado* (1998) 64 Cal.App.4th 1350, 1358 [each defendant must pay separate filing fee].) The order awarding costs therefore must be modified to reduce it by $435, the difference between the $1,225 defendants actually paid and the $790 they should have paid. (See, e.g., *Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1154 [modifying costs order to delete items improperly awarded]; *Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1627-1628 [same]; *Gaffey v. Mann* (1906) 3 Cal.App. 124, 127 [unnecessary filing fee was properly stricken from cost bill].)

29

DISPOSITION

The judgment is affirmed.  The postjudgment order awarding costs is modified by reducing the total amount awarded from $11,530.70 to $11,095.70, and as so modified the order is affirmed.  Defendants are entitled to recover their costs on appeal.

_____

IRION, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

AARON, J.